**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | |
|---|---|
| WILLIE WALKER JR., <br><br> Plaintiff, <br><br> v. <br><br> ACCURATE BACKGROUND, LLC, <br><br> Defendant. | Case No.: 1:24-634-JFA <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Willie Walker Jr. ("Plaintiff" or "Mr. Walker") by and through his counsel brings the following Complaint against Accurate Background, LLC ("Defendant" or "Accurate") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed that Plaintiff had two pending felonies for violent crimes and sexual in nature.

**INTRODUCTION**

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database

and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was charged with felony kidnapping and felony sexual assault. Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff has never been charged with a kidnapping or sexual assault crime in his life.

5. Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate and heinous pending felony charges, which do not belong to Plaintiff.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Aiken County, South Carolina regarding the pending felony charges prior to publishing Plaintiff's report to his prospective employer.

7. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that **the criminal records belong to a different consumer** who is wholly distinguishable from Plaintiff by their middle names, the suffix in their names, their date of birth, address history, social security numbers, and driver's license number.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Defendant's inaccurate report cost Plaintiff a good paying job and job security. The unemployment caused by Defendant's reporting also resulted in Plaintiff losing his car because he was unable to make the monthly payments.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – **the criminal records that do not belong to him** – was inaccurate and delete the disputed information from the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

13. Willie Walker Jr. ("Plaintiff" or "Mr. Walker") is a natural person residing in Aiken, South Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant Accurate Background, LLC ("Defendant" or "Accurate") is a California corporation doing business throughout the United States, including the State of California and in this District, and has a principal place of business located at 7515 Irvine Center Drive, Irvine, CA 92618.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result

of the increasing availability of this data, there has been a boom in the background check industry.

30.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

31.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.

32.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33.     Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34.     Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf  ("CFPB Report").

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting pending felony charges that belong to an unrelated consumer who has a different middle name, suffix, date of birth, social security number, address history, and driver's license number.

39. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS
### Plaintiff Applies for a Job with Shaw Industries Group

40.  In or about mid-November 2023, Plaintiff applied for full-time employment as a forklift operator with Shaw Industries Group, located in Aiken, South Carolina.

41.  Upon applying to Shaw Industries Group, Plaintiff successfully completed two interviews and passed a drug test.

42.  On or about December 5, 2023, Shaw Industries Group extended a job offer to Plaintiff for the position to which he applied, earning $17.76 per hour plus a competitive benefits package. The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

### Defendant Published an Inaccurate Background Check Report to Shaw Industries Group

43.  Shaw Industries Group contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

44.  On or about December 5, 2023, Shaw Industries Group ordered a criminal background check on Plaintiff from Defendant.

45.  On or about December 8, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Shaw Industries Group.

46.  Within that employment report, Defendant published inaccurate information about Plaintiff.

47.  Specifically, Defendant's employment report about Plaintiff included a grossly inaccurate and stigmatizing pending felony kidnapping charge, as well as a pending

9

...

felony sexual assault charge from Aiken County, South Carolina, which appeared in the employment report as follows:







48. The pending criminal charges reported by Defendant about Plaintiff to Shaw Industries Group *do not* belong to Plaintiff.

49. Plaintiff has never been charged with or convicted of a kidnapping or sexual assault-related crime in his life.

50. A cursory review of the widely available underlying public court records confirms that the records belong to an unrelated male Willie E. Walker Sr. ("Charged Felon Walker").

51. Had Defendant actually consulted or obtained the widely available underlying public court records regarding the two convictions, it would have seen obvious discrepancies between Charged Felon Walker and Plaintiff.

52. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Charged Felon Walker include the following:

    (a) Plaintiff's legal name is "Willie Walker *Jr.*" (no middle name) and the criminal records belong to a "Willie *E.* Walker *Sr.*," which is both

        clearly indicated on the face of the employment report and in the widely available public records from Aiken County, South Carolina;

(b)    Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject employment report, is in ***November 1961***, yet the underlying public court records indicate that Charged Felon Walker's date of birth is in ***June 1963***;

(c)    Plaintiff's address history is distinguishable from that of Charged Felon Walker, including but not limited to the address associated with the pending criminal charges at issue, 852 Forsythe St Augusta, GA 30901-2554 is not and has never been Plaintiff's address;

(d)    Plaintiff's driver's license number and state of issuance are distinguishable from that of Charged Felon Walker. Plaintiff's driver's license is issued by the state of South Carolina, whereas Charged Felon Walker's driver's license is issued by the state of Georgia.

(e)    Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject employment report is entirely different than that of Charged Felon Walker.

53.    The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

12

54. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different middle name, suffix, date of birth, address history, and driver's license number.

55. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Shaw Industries Group Denies Plaintiff's Job Application

56. On or about December 8, 2023, Plaintiff was notified by Shaw Industries Group that his employment application was denied as a direct result of the inaccurate felony charges reported by Defendant.

57. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of another, namely Charged Felon Walker, were published in the employment report Defendant sold about Plaintiff to Shaw Industries Group.

58. Plaintiff contacted Shaw Industries Group and informed them that he is not Charged Felon Walker, that he does not have a middle name much less one beginning with an E, his suffix is "Jr." not "Sr.," that he has a different social security number, address history, and date of birth from that of Charged Felon Walker. Plaintiff explained that the serious criminal convictions of Charged Felon Walker do not belong to him.

59. Shaw Industries advised Plaintiff to contact Defendant.

60. Plaintiff was very panicked, confused, and concerned about the impact of Charged Felon Walker's serious criminal convictions reported on the subject employment report – specifically, the impact of the same on his future.

61. Plaintiff was sick to his stomach at the thought that such abhorrent, horrendous, and violent sexual crimes were associated with him, especially with his potential new employer.

62. Specifically, Defendant matched Plaintiff and Charged Felon Walker and published the criminal records of Charged Felon Walker onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendants prior to publishing Plaintiff's employment report to Shaw Industries Group, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment Report**

63. On December 14, 2023, desperate to secure employment with Shaw Industries Group and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant via telephone.

64. Plaintiff identified himself and provided information to Defendant to support his dispute.

65. Plaintiff specifically disputed the criminal records of Charged Felon Walker.

66. Plaintiff specifically stated that the criminal records of Charged Felon Walker do not belong to Plaintiff.

67. Plaintiff specifically asked Defendant to investigate and delete Charged Felon Walker's criminal records from any employment report about Plaintiff.

68. Defendant directed Plaintiff to also submit a dispute via email.

69. That same day, Plaintiff disputed the inaccurate information with Accurate via email.

70. In Plaintiff's email dispute to Defendant, he also explained that he had called the Sheriff's department and provided his birthdate in November 1961 and that the Sheriff's department told Plaintiff that the person actually charged with kidnapping and sexual assault had a completely different birthdate in June 1963.

71. Plaintiff also texted Shaw Industries' human resources manager, Mercadi Deckert, a news article about Charged Felon Walker's crimes and included a photo of the other person, who obviously did not match the driver's license photo Plaintiff had provided to Shaw Industries. Plaintiff also explained to Ms. Deckert that he spoke to the Sheriff's office and the other person was born in 1963, when Plaintiff was born in 1961. *See* https://www.wjbf.com/news/augusta-man-arrested-for-kidnapping-and-attempted-sexual-assault/.

72. Plaintiff continued to call Defendant numerous times to follow up on the status of his dispute – he was getting desperate as he had no income and was now getting behind on his car payments and needed to make a repair. Plaintiff also lives with his mother in order to take care of her and pay the bills and that was becoming difficult.

73. On or about January 8, 2024, Defendant finally responded to Plaintiff's dispute by removing the inaccurate felonies belonging to Charged Felon Walker.

74. Due to Plaintiff's own continued efforts to communicate with Shaw Industries and the updated report, Shaw Industries finally reinstated its job offer to Plaintiff.

75. However, Plaintiff's first day of work was not until January 29, 2024.

76. By then Plaintiff lost his only car because he had not been able to maintain the payments – he had to voluntarily surrender his 2014 Hyundai to the lender.

77. Now that he has no car, Plaintiff must pay for a $30 ride each day to get to work in the morning. To save money, Plaintiff takes a Senior Bus home, which takes more than an hour even though Shaw Industries is only 10 minutes from his house.

78. But for Defendant's inaccurate employment report, Plaintiff's job offer would have proceeded to an immediate hiring action, and Plaintiff would not have lost his car, he would not be paying over $200 per week for transportation, and he would not need to purchase a new car.

79. Plaintiff also would have been spared the humiliation, embarrassment, stress, and labor imposed upon Plaintiff to correct Defendant's erroneous reporting.

80. Plaintiff was horrified that his now-employer thought he had committed sexual assault and kidnapping.

81. Defendant's false report cost Plaintiff nearly two months of lost income (over $5,500).

82. Plaintiff was also humiliated to have to borrow money from his fiancé just to pay for food.

83. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

84. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## **CLAIMS FOR RELIEF**

### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

85. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

86. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

87. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

88. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

89. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

90. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

91. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

92. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 7th day of February 2024.

*/s/ Dawn McCraw*
Dawn McCraw (SCB #105059)
Consumer Attorneys
8245 N 85th Way
Scottsdale, AZ 85258
T: (818) 600-5585
F: (818) 600-5485
E: dmccraw@consumerattorneys.com

*Attorneys for Plaintiff,*
*Willie Walker Jr.*